## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

| | |
|---|---|
| KATE KRECHTING and ANDREA FAHEY, individually and on behalf of all others similarly situated, | |
| Plaintiffs, | |
| - against - | Class Action Complaint |
| MOLSON COORS BEVERAGE COMPANY USA LLC, | Jury Trial Demanded |
| Defendant | |

Kate Krechting ("Plaintiff Krechting") and Andrea Fahey ("Plaintiff Fahey") ("Plaintiffs") allege upon information and belief, except for allegations about Plaintiffs, which are based on personal knowledge:

## I.    MIMOSA BASED ON SPARKLING WINE AND ORANGE JUICE

1.    Most historians attribute the creation of the mimosa cocktail to famed bartender Frank Meier at the Ritz Hotel in Paris in 1925.

2.    Meier's original creation "called for a cube of ice in a wine glass, fresh juice from half an orange, and equal parts champagne."

3.    He dubbed this cocktail a "mimosa" because its sharp and tangy taste reminded him of the brightly colored Central American flower of the same name.

4.    As Meier's proteges spread out across Europe, they substituted champagne with the sparkling wines of the regions, such as cava in Spain and

prosecco in Italy.

5.      Almost a hundred years later, a mimosa is still defined as consisting "of champagne (or other sparkling wine) and chilled citrus juice, usually orange juice."[1]

 

6.      A leading alcoholic beverages website, Flaviar, defines this cocktail as "orange juice [plus] sparkling wine."

7.      Oxford Reference indicates "mimosa" is the "American name for a mixture of sparkling wine and orange juice, known in the UK as buck's fizz."

8.      The mimosa is recognized by the International Bartender's Association ("IBA"), which describes how it is prepared by "Pour[ing] orange juice into a flute glass and gently pour[ing] [in] the sparkling wine."

9.      According to the leading Florida social magazine, VIP Pensacola, "mimosas are most often created using one part champagne or sparkling wine to one

---

[1] Mimosa, Wikipedia.

part orange juice."[2]

10.   The mimosa's celebratory feel can be had with little effort, since "it can be made relatively inexpensively…Because you're mixing your ingredients, it doesn't require the use of premium quality champagne or sparkling wine."

11.   The mimosa's "simple yet courtly qualities lend themselves well to morning consumption – acting as a sort of mood-lifting, waking concoction full of fizz and bright, citrusy acid with a natural sugary undertone."[3]

12.   As "brunch emerged as a social phenomenon, the Mimosa quickly claimed its place as the drink of choice for daytime indulgence," unseating the Bloody Mary.[4]

13.   Its "combination of sparkling champagne and tangy orange juice perfectly complemented brunch favorites like eggs Benedict and fluffy pancakes."

14.   Soon, it "became synonymous with leisurely Sunday mornings and lavish brunch gatherings."

15.   "Bottomless mimosas" are a brunch staple in Florida and the nation.

---

[2]  Liesel Schmidt, Sunny Delight, VIP Pensacola, Aug. 6, 2019.
[3]  Beth McKibben, The Underappreciated Morning Cocktail – The Mimosa, GPB News, Mar. 9, 2018.
[4]  The Drink Digest, The Fascinating History of Mimosa Cocktails, Medium, Sept. 12, 2023; The Breakfast Shoppe, How the Mimosa became the Official Drink of Brunch.




16.    One publication even described the mimosa as the "signature drink" of Florida, owing to this State's abundance of fresh Florida oranges.[5]

17.    Mimosas have even become "the most popular cocktail in the U.S.," "based on the number of states searching for each one most."



## II.   EMERGENCE OF CANNED COCKTAILS

18.    The Coronavirus pandemic, which caused consumers to stay home, resulted in changes in the way alcohol was consumed.[6]

19.    While traditional cocktails are prepared at bars or restaurants, government restrictions meant these options were no longer available.

---

[5] The Daily Meal, A Signature Drink For Every State.

[6] Audrey Altmann, Why Consumers are Still Reaching for Canned Alcoholic Drinks, SmartBrief, July 27, 2021.

20.   The market responded to consumer demand with the proliferation of ready-to-drink ("RTD") alcoholic beverages or "canned cocktails," which replicated their namesake drinks.

21.   This new wave of canned cocktails were made with the same base alcohol as the cocktails sold at bars or mixed at home.

22.   No longer would consumers need to accept alcoholic beverages with a neutral malt base and only flavored like their favorite cocktails, as they could buy these drinks already prepared in convenient formats.

23.   To meet this demand, Molson Coors Beverage Company USA LLC sells alcoholic beverages described as "Mimosa Hard Seltzer" in orange packaging, with pictures of oranges, described as "Made With Real Orange Juice," under its Vizzy brand ("Product").





24.   Since the Product appears to be a "beer[] not made with both malted barley and hops," it does "not fall within the definition of a 'malt beverage' under the [Federal Alcohol Administration Act ('FAAA'), 27 U.S.C. § 201 *et seq.*]. 27 C.F.R. § 7.6(b).[7]

25.   The result is that its labeling is controlled by 27 C.F.R. § 25.142(a) and "the applicable labeling regulations for foods issued by the U.S. Food and Drug Administration." 27 C.F.R. § 7.6(b) citing 21 C.F.R. Part 101.

## III.  "MIMOSA HARD SELTZER" IS MISLEADING NAME

26.   The labeling and packaging are misleading for multiple reasons, in violation of the Federal Food, Drug and Cosmetic Act ("FFDCA") and the identical requirements of the Food Safety Act ("FSA"). 21 U.S.C. § 301 *et seq*; Fla. Stat. §

---

[7] This analysis is based on its second most predominant ingredient of sugar, presumably the base for the alcohol, and its description as "gluten free."

500.01 *et seq.*; Fla. Stat. § 500.02(2) ("Provide legislation which shall be uniform, as provided in this chapter, and administered so far as practicable in conformity with the provisions of, and regulations issued under the authority of, the [FFDCA]."); FL Admin Code § 5K-4.002(1)(d) (adopting 21 C.F.R. Parts 101 and 102).

27.   These laws recognize that "consumers initially [] rely on extrinsic cues such as visual information on labels and packaging," thereby "develop[ing] sensory [and other] expectations" about what they are buying, and relied on labeling and packaging in the short time in which they decide what to buy.[8]

28.   The Product is "misbranded" and misleads consumers because its labeling as "Mimosa Hard Seltzer," in orange packaging, with pictures of oranges, described as "Made With Real Orange Juice," when it was a beer and not based on sparkling wine, is false or misleading. 21 U.S.C. § 343(a)(1); Fla. Stat. § 500.11(1)(a).

29.   The Product is "misbranded" and misleading to consumers because "Mimosa Hard Seltzer" is not its "common or usual name." 21 U.S.C. § 343(i); Fla. Stat. § 500.11(1)(i).

30.   First, "Mimosa Hard Seltzer" does not "accurately identif[y] or

---

[8] Lancelot Miltgen et al., "Communicating Sensory Attributes and Innovation through Food Product Labeling," Journal of Food Product Marketing, 22.2 (2016): 219-239; Helena Blackmore et al., "A Taste of Things to Come: The Effect of Extrinsic and Intrinsic Cues on Perceived Properties of Beer Mediated by Expectations," Food Quality and Preference, 94 (2021): 104326.

describe[s], in as simple and direct terms as possible, the basic nature of the food or its characterizing properties or ingredients." 21 U.S.C. § 343(i); Fla. Stat. § 500.11(1)(i); 21 C.F.R. § 102.5(a); FL Admin Code § 5K-4.002(1)(d).

31. This is because despite the expectation of consumers that they will receive a mimosa with sparkling wine based on the statements of "Mimosa Hard Seltzer" and "Made With Real Orange Juice," pictures of oranges, and orange packaging, what they receive is "beer." 21 U.S.C. § 343(i); Fla. Stat. § 500.11(1)(i); 21 C.F.R. § 101.3(b)(2)-(3).

32. This is not disclosed as part of the required "statement of identity" on the front packaging, but only in the fine print on the reverse side of the cans, which requires buying and opening the case. 21 C.F.R. § 101.3(b)(2)-(3).

 

33.   Even if consumers looked at the bottom of the package prior to buying it, they would not see it identified as a "beer" anywhere in the fine print.



34.   In place of receiving an alcoholic beverage based on "sparkling wine," purchasers receive "Sparkling Water, [with] Cane Sugar, Natural Flavors, Orange Juice Concentrate, Citric Acid, Tartaric Acid, Sodium Citrate, Dried Acerola Cherry Juice, [and] Stevia."

35.   Second, the descriptor of "Hard Seltzer" after "Mimosa" is not "uniform among all identical or similar products and [is] confusingly similar to the name of [] other food[s] [] not reasonably encompassed within the same name." 21 C.F.R. § 102.5(a); FL Admin Code § 5K-4.002(1)(d).

36.   While the last five years have seen a proliferation of alcoholic beverages described as "hard seltzer," "resident liquor geek" Jim Vorel with Paste Magazine

observed that "few drinkers seem to understand what [hard seltzers] are at all."[9]

37.   The Alcohol and Tobacco Tax and Trade Bureau ("TTB") concurred, concluding that "hard seltzer" is insufficient to inform consumers about the nature of the alcoholic beverage they are buying.

38.   The leading trade journal, Hard Seltzer News, recognized that "[C]onfusion about [a] hard seltzer['s] alcohol base is prevalent on the web, somewhat due to the lack of information about this rapidly rising category," noting that a popular brand of "hard seltzer" "is not a vodka soda."[10]

39.   Vorel noted that "the most natural assumption for the consumer would probably be that hard seltzers are simply sparkling water, mixed with a bit of high-proof neutral spirit (like vodka, or grain alcohol) and fruit flavoring [which] would essentially make them canned mixed drinks."

40.   However, products described as "hard seltzer" can have an alcohol base of distilled spirits, such as tequila or vodka, or malted barley and hops.

---

[9] Cocktail Queries: What IS Hard Seltzer, Really, and Why Is It So Popular? Jim Vorel  June 29, 2020
[10] Erin Grafton -November 30, 2020, WAIT, WHAT? WHITE CLAW DOESN'T CONTAIN VODKA?

Alcohol                              Product

Tequila



Vodka



Malted Barley



41.  Additionally,  products  described  as  "hard  seltzer"  are  sold  with  an

alcohol base of champagne and wine, shown through Cheers! Raspberry Champagne Hard Seltzer and Florida's Deep Brewing Company's Peach Deep Water Hard Seltzer, based on champagne, Rose Hard Seltzer, Barefoot Hard Seltzer Wine-Based Seltzer, Cliche Wine Hard Seltzer, and Pacific Fruit Vineyards' Wine Hard Seltzer.

<u>Alcohol</u>                                 <u>Products</u>

Champagne




Wine




 

42.   "Mimosa Hard Seltzer" is misleading because unlike other competitor products, it is not based on wine, sparkling wine or champagne, but on fermented sugar, which qualifies it as a "beer."

43.   Third, "Mimosa Hard Seltzer" is not "uniform among all identical or similar products and [is] confusingly similar to the name of [] other food[s] [] not reasonably encompassed within the same name." 21 C.F.R. § 102.5(a); FL Admin Code § 5K-4.002(1)(d).

44.   This is evident from the numerous competitor canned RTD mimosas, such as the Mimosa Spritz from Florida-based Miami Cocktail[11], Ohza's Classic Mimosa, O.G.'s Canned Mimosa, Picnic Brunch's Mimosa, Soleil Mimosa, and Suntide's Classic Mimosa.

---

[11] Nicole Danna, Miami Cocktail Company Launches Wine-Based Cocktails in a Can, Miami New Times, Nov. 5, 2019.

  

  

45.   These canned mimosas are based on sparkling wine and orange juice, in contrast to Defendant's "Mimosa Hard Seltzer," which is based on sparkling water and orange juice, with its alcohol not from grapes but from sugar.

46.   Fourth, "Mimosa Hard Seltzer" is a misleading "common or usual name" because it does not "accurately identif[y] or describe[s], in as simple and direct terms as possible, the basic nature of the food or its characterizing properties or ingredients." 21 C.F.R. § 102.5(a); FL Admin Code § 5K-4.002(1)(d).

47.   Though the characterizing ingredients of a mimosa are orange juice and sparkling wine, "Mimosa Hard Seltzer" fails to disclose it lacks sparkling wine.

48.   Federal and state law require "Mimosa Hard Seltzer" to "include the percentage(s) of any characterizing ingredient(s) or component(s) when the proportion of such ingredient(s) or component(s) in the food has a material bearing on price or consumer acceptance or when the labeling or the appearance of the food may otherwise create an erroneous impression that such ingredient(s) or component(s) is present in an amount greater than is actually the case." 21 C.F.R. § 102.5(b).

49.   The proportion of sparkling wine has a material bearing on the price of the Product, because sparkling wine is more expensive than alcohol obtained from sugar. 21 C.F.R. § 102.5(b).

50.   The proportion of sparkling wine has a material bearing on consumer acceptance, because consumers prefer alcohol from grapes versus sugar for several reasons. 21 C.F.R. § 102.5(b).

51.   Consumers know that wine has health qualities lacking from other types of alcohol and is better for you than sugar.

52.   Consumers know wine is a natural product, made from grapes.

53.   Consumers prefer the light, crisp taste of wine more than neutral flavored alcohol obtained from sugar.

54.   The proportion of sparkling wine has a material bearing on consumer acceptance of the Product, because its "labeling or [] appearance [] …create[s] an erroneous impression that [sparkling wine] is present in an amount greater than is actually the case." 21 C.F.R. § 102.5(b).

55.   This is because consumers seeing "Mimosa Hard Seltzer," in orange packaging with pictures of oranges, described as "Made With Real Orange Juice," will expect it to contain the other essential mimosa ingredient of sparkling wine.

56.   To prevent consumers from being misled, "Mimosa Hard Seltzer" was required to indicate "The percentage of [the] characterizing [sparkling wine] ingredient…on the basis of its quantity." 21 C.F.R. § 102.5(b)(1).

57.   The amount of sparkling wine should have "be[en] declared by the words 'containing (or contains)   [0]   percent (or %)  [sparkling wine]' or '  [0]  percent (or %)  [sparkling wine]' with the first blank filled in with the percentage expressed as a whole number not greater than the actual percentage … and the second blank filled in with [that ingredient's] common or usual name." 21 C.F.R. § 102.5(b)(2).

58.   Federal and state law required "Mimosa Hard Seltzer" to "include a statement of the presence or absence of [its] characterizing ingredient(s) [of sparkling wine] [because] [its] presence or absence…has a material bearing on price or consumer acceptance [and because] the labeling or the appearance…otherwise create[s] an erroneous impression that [sparkling wine] is present when it is not, and

consumers may otherwise be misled about the presence or absence of [sparkling wine] []in [Mimosa Hard Seltzer]." 21 C.F.R. § 102.5(c).

59. To prevent consumers from being misled, "The [] absence of [sparkling wine] [was required to] be declared by the words … 'containing (or contains) no  [sparkling wine]' or 'no  [sparkling wine]' or 'does not contain  [sparkling wine]', with the blank being filled in with the common or usual name of the ingredient." 21 C.F.R. § 102.5(c)(1).

60. This statement that the Product contains no sparkling wine was required to "appear following or directly below the part of the common or usual name" of "Mimosa Hard Seltzer" "in easily legible boldface print or type." 21 C.F.R. § 102.5(c)(3).

61. Fifth, the Product is "misbranded" and misleads consumers because it makes "false or misleading representation with respect to another food," mimosas, because it is identified as a "Mimosa [Hard Seltzer]," "Made With Real Orange Juice." 21 C.F.R. § 101.18(a). FL Admin Code § 5K-4.002(1)(d).

62. However, the Product lacks the mimosa ingredient of sparkling wine and has an alcohol base from sugar, not grapes.

63. Sixth, the Product is "misbranded" and misleads consumers because the name "Mimosa Hard Seltzer" "suggests the name of one or more but not all such ingredients," because consumers will expect sparkling wine and orange juice. 21

C.F.R. § 101.18(b). FL Admin Code § 5K-4.002(1)(d).

64.   However, "Mimosa Hard Seltzer" is misleading because even though it contains orange juice, it lacks sparkling wine, notwithstanding the absence of this ingredient is disclosed in the fine print of the ingredient list on the back of the package and cans. 21 C.F.R. § 101.18(b). FL Admin Code § 5K-4.002(1)(d).

## IV.  CONCLUSION

65.   The labeling of "Mimosa Hard Seltzer" in orange packaging, with pictures of oranges, described as "Made With Real Orange Juice," tells consumers they are buying a canned version of a mimosa, defined by the presence of sparkling wine and orange juice.

66.   Instead, consumers get an alcoholic beverage based not on sparkling wine, but based on sugar, or a "beer."

67.   As a result of the false and misleading representations and omissions identified here, the Product identified here is sold at a premium price, at or around $18.99 for twelve 12 oz cans, excluding tax and sales, higher than similar products, represented in a non-misleading way, and/or higher than it would be sold for absent the misleading representations and omissions.

## JURISDICTION

68.   Jurisdiction is based on the Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2).

69.   The aggregate amount in controversy exceeds $5 million, including any statutory or punitive damages, exclusive of interest and costs.

70.   Plaintiff Krechting is a citizen of Florida.

71.   Defendant is a Delaware limited liability company.

72.   Defendant is a citizen of Illinois and Wisconsin based on the citizenship of its members.

73.   The class of persons Plaintiff Krechting seeks to represent includes persons who are citizens of a different state from which Defendant is a citizen.

74.   The members of the proposed class Plaintiff Krechting seeks to represent are more than one hundred, because the Product has been sold at grocery stores, wine stores, big box stores, bodegas, gas stations, warehouse club stores, drug stores, convenience stores, specialty grocery stores, Alcohol Beverage Control ("ABC") stores, ethnic food stores and/or online in this State to citizens of this State.

75.   The Court has jurisdiction over Defendant because it transacts business within Florida and sells the Product to consumers within Florida from grocery stores, wine stores, big box stores, bodegas, gas stations, warehouse club stores, drug stores, convenience stores, specialty grocery stores, ABC stores, ethnic food stores and/or online in this State to citizens of this State.

76.   Defendant transacts business in Florida, through the sale of the Product to citizens of Florida from grocery stores, wine stores, big box stores, bodegas, gas

stations, warehouse club stores, drug stores, convenience stores, specialty grocery stores, ABC stores, ethnic food stores and/or online in this State to citizens of this State.

77.   Defendant has committed tortious acts within this State through the distribution and sale of the Product, which is misleading to consumers in this State.

78.   Defendant has committed tortious acts outside this State by labeling, representing and selling the Product in a manner which causes injury to consumers within this State by misleading them as to its contents, origins, amount and/or quality, by regularly doing or soliciting business, or engaging in other persistent courses of conduct to sell the Product to consumers in this State, and/or derives substantial revenue from the sale of the Product in this State.

79.   Defendant has committed tortious acts outside this State by labeling the Product in a manner which causes injury to consumers within this State by misleading them as to its origins, type, contents, amount and/or quality, through causing the Product to be distributed throughout this State, such that it expects or should reasonably expect such acts to have consequences in this State and derives substantial revenue from interstate or international commerce.

**VENUE**

80.   Venue is in this District with assignment to Orlando Division because a substantial or the entire part of the events or omissions giving rise to these claims

occurred in Brevard County, which is where Plaintiff Krechting's causes of action accrued.

81.   Plaintiff Krechting purchased, used and/or consumed the Product in reliance on the labeling and packaging identified here in Brevard County.

82.   Plaintiff Krechting resides in Brevard County.

## PARTIES

83.   Plaintiff Krechting is a citizen of Brevard County, Florida.

84.   Plaintiff Fahey is a citizen of Indian River County, Florida.

85.   Defendant Molson Coors Beverage Company USA LLC is a Delaware limited liability company.

86.   Defendant's principal place of business is in Illinois.

87.   Defendant is one of the world's largest seller of alcoholic beverages.

88.   Plaintiffs are like most consumers who prefer alcoholic beverages based on sparkling wine to those based on sugar, due to reasons including superior quality, health-related benefits and/or taste.

89.   Plaintiffs are among the many Americans who have interest in mimosas.

90.   Plaintiffs have consumed drinks identified as mimosas before and/or know a mimosa is a cocktail based on sparkling wine and orange juice.

91.   Plaintiffs are like all consumers and the public who associate a mimosa with a cocktail containing sparkling wine and orange juice.

92.   Plaintiffs are like all consumers who look to the front label of products they buy to see what they are buying and to learn basic information.

93.   Plaintiffs are like all consumers and are accustomed to the front label of packaging telling them if what they are buying contains the components and ingredients expected for that product.

94.   In seeing a product labeled as a "Mimosa Hard Seltzer," in orange packaging, with pictures of oranges, described as "Made With Real Orange Juice," Plaintiffs expected the Product's alcohol base to be from sparkling wine instead of sugar.

95.   Plaintiffs expected the Product to contain sparkling wine and did not expect to buy a "beer."

96.   Plaintiffs expected more than a mimosa "taste," but the cocktail known as a mimosa, based on the essential and traditional mimosa ingredients of sparkling wine and orange juice.

97.   Plaintiffs read, saw and relied on "Mimosa Hard Seltzer" in orange packaging, with pictures of oranges, described as "Made With Real Orange Juice," and expected this meant the Product would contain sparkling wine.

98.   Plaintiffs did not expect the Product to lack contain sparkling wine nor did they know its alcohol would be based on sugar.

99.   Plaintiff Krechting purchased the Product between February 2022 and

22

December 2023, with the labeling identified here, at grocery stores, wine stores, big box stores, bodegas, gas stations, warehouse club stores, drug stores, convenience stores, specialty grocery stores, ABC stores, and/or ethnic food stores in this State, in Brevard County, and/or other areas.

100. Plaintiff Fahey purchased the Product between February 2022 and December 2023, with the labeling identified here, at grocery stores, wine stores, big box stores, bodegas, gas stations, warehouse club stores, drug stores, convenience stores, specialty grocery stores, ABC stores, and/or ethnic food stores in this State, in Indian River County, and/or other areas.

101. Plaintiffs bought the Product at or around the above-referenced price.

102. Plaintiffs paid more for the Product than they would have had they known (1) it was not a mimosa, (2) it did not contain sparkling wine, (3) its alcohol was based on sugar, and (4) it was a beer, as they would not have bought it or would have paid less.

103. The Product was worth less than what Plaintiffs paid, and they would not have paid as much absent Defendant's false and misleading statements and omissions.

## CLASS ALLEGATIONS

104. Plaintiffs seek to represent the following class:

> All persons in Florida who purchased the
> Product with the labeling and packaging

23

identified here, in Florida during the statutes
of limitations for each cause of action alleged
in reliance on the representations and
omissions identified here.

105. Excluded from the Class are (a) Defendant, Defendant's board members,

executive-level officers, and attorneys, and immediate family members of any of the

foregoing persons, (b) governmental entities, (c) the Court, the Court's immediate

family, and Court staff and (d) any person that timely and properly excludes himself

or herself from the Class.

106. Common questions of issues, law, and fact predominate and include

whether Defendant's representations were and are misleading and if Plaintiffs and

class members are entitled to damages.

107. Plaintiffs' claims and basis for relief are typical to other members

because all were subjected to the same unfair, misleading, and deceptive

representations, omissions, and actions.

108. Plaintiffs are adequate representatives because their interests do not

conflict with other members.

109. No individual inquiry is necessary since the focus is only on Defendant's

practices and the class is definable and ascertainable.

110. Individual actions would risk inconsistent results, be repetitive and are

impractical to justify, as the claims are modest relative to the scope of the harm.

111. The class is sufficiently numerous and likely includes several thousand

people.

112. This is because Defendant sells the Product to consumers through hundreds of third-party retailers and online in the State Plaintiffs are seeking to represent.

113. Plaintiffs' Counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

## CAUSES OF ACTION

### COUNT I
Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"),
Fla. Stat. § 501.201, *et seq.*

114. Plaintiffs incorporate by reference paragraphs 1-67.

115. The purpose of FDUTPA is to protect consumers against unfair and deceptive practices. Fla. Stat. § 501.202(2).

116. This includes making state consumer protection and enforcement consistent with established policies of federal law relating to consumer protection. Fla. Stat. § 501.202(3).

117. FDUTPA considers false advertising and deceptive practices in the conduct of any trade or commerce to be unlawful. Fla. Stat. § 501.204(1).

118. Such "unfair or deceptive acts or practices" must be construed so that "due consideration and great weight shall be given to the interpretations of the FTC and the federal courts relating to [the FTC Act,] 15 U.S.C. § 45(a)(1)." Fla. Stat. §

501.204(2).

119. Violations of FDUTPA can be based on other laws and standards related to consumer deception. Fla. Stat. § 501.203(3).

120. Violations of FDUTPA can be based on the principles of the Federal Trade Commission Act ("FTC Act") and FTC decisions with respect to those principles. Fla. Stat. § 501.204(2); 15 U.S.C. § 45 *et seq*.

121. An FDUTPA violation occurs whenever "Any rules promulgated pursuant to the FTC Act, 15 U.S.C. § 41 *et seq*." are violated. Fla. Stat. § 501.203(3)(a).

122. An FDUTPA violation occurs whenever "The standards of unfairness and deception set forth and interpreted by the [FTC] or the federal courts" relating to the FTC Act are violated. Fla. Stat. § 501.203(3)(b).

123. An FDUTPA violation occurs whenever "Any law, statute, rule, regulation, or ordinance which proscribes…unfair, deceptive, or unconscionable acts or practices" is violated. Fla. Stat. § 501.203(3)(c).

124. In considering whether advertising is misleading in a material respect, the FTC Act recognizes that the effect of advertising includes not just representations made or suggested by words and images, "but also the extent to which [it] fails to reveal facts material in the light of such representations." 15 U.S.C. § 55(a)(1).

125. In considering whether a food's label is misleading, it is required to

"take[] into account, among other things, not only representations made or suggested by statement, word, design, [] or in any combination thereof, but also the extent to which the labeling or advertisement fails to prominently and conspicuously reveal facts relative to the proportions or absence of certain ingredients or other facts concerning ingredients in the food, which facts are of material interest to consumers." Fla. Stat. § 500.03(2)(b).

126. Defendant's false and deceptive representations and omissions with respect to the presence of sparkling wine in its Mimosa Hard Seltzer are material in that they are likely to influence consumer purchasing decisions.

127. This is because consumers buying alcoholic beverages identified as "Mimosa Hard Seltzer," in orange packaging, with pictures of oranges, described as "Made With Real Orange Juice," will expect what they are buying is a mimosa cocktail in a can, with sparkling wine, instead of a beer, with alcohol obtained from sugar and not from grapes.

128. The labeling of the Product violated the FTC Act and thereby violated FDUTPA because the representations and omissions of "Mimosa Hard Seltzer," in orange packaging, with pictures of oranges, described as "Made With Real Orange Juice," tells purchasers they are buying a mimosa cocktail in a can, with sparkling wine, which created the erroneous impression its alcohol content was from sparkling wine, when this was false, because it was a beer with its alcohol based on sugar. Fla.

Case 6:24-cv-00520-PGB-LHP   Document 1   Filed 03/15/24   Page 28 of 33 PageID 28

Stat. § 501.203(3)(a).

129. The labeling of the Product violates laws, statutes, rules and regulations "which proscribe[]…unfair, deceptive, or unconscionable acts or practices," thereby violating FDUTPA. Fla. Stat. § 501.203(3)(c).

130. The labeling of the Product violated FDUTPA because the representations and omissions of "Mimosa Hard Seltzer," in orange packaging, with pictures of oranges, described as "Made With Real Orange Juice," when its alcohol source was based on sugar, not sparkling wine, was unfair and deceptive to consumers. Fla. Stat. § 501.204(1).

131. The labeling of the Product violated FDUTPA because the representations and omissions of "Mimosa Hard Seltzer," in orange packaging, with pictures of oranges, described as "Made With Real Orange Juice," when its alcohol source was based on sugar, not sparkling wine, was contrary to the Food Safety Act, which adopted the FFDCA and accompanying regulations.

132. The FFDCA and its regulations prohibit consumer deception by companies in the labeling of food. Fla. Stat. § 501.203(3)(c).

133. These include the following federal and state laws and regulations described above.

|              Federal              |              State              |
| :-------------------------------: | :-----------------------------: |
|       21 U.S.C. § 343(a)(1)       |      Fla. Stat. § 500.02(2)      |

28

| | |
|---|---|
| 21 U.S.C. § 343(i) | Fla. Stat. § 500.11(1)(a) |
| | Fla. Stat. § 500.11(1)(i) |
| 21 C.F.R. § 101.18(a) | FL Admin Code § 5K-4.002(1)(d) |
| 21 C.F.R. § 101.18(b) | |
| 21 C.F.R. § 101.3(b)(2)-(3) | |
| 21 C.F.R. § 102.5(a) | |
| 21 C.F.R. § 102.5(b) | |
| 21 C.F.R. § 102.5(b)(1) | |
| 21 C.F.R. § 102.5(b)(2) | |
| 21 C.F.R. § 102.5(c) | |
| 21 C.F.R. § 102.5(c)(1) | |
| 21 C.F.R. § 102.5(c)(3) | |
| 27 C.F.R. § 7.6(b) | |
| 27 C.F.R. § 25.142(a) | |

134. Plaintiffs believed the Product was a mimosa, defined by the presence of sparkling wine and orange juice, with its alcohol from sparkling wine, based on "Mimosa Hard Seltzer" in orange packaging, with pictures of oranges, described as "Made With Real Orange Juice," even though its alcohol was based on sugar and it was a "beer."

135. Plaintiffs seek to recover for economic injury and/or loss they sustained based on the misleading labeling and packaging of the Product, a deceptive practice under FDUTPA.

136. Plaintiffs will produce evidence showing how they and consumers paid more than they would have paid for the Product, relying on Defendant's representations and omissions, using statistical and economic analyses, hedonic regression, hedonic pricing, conjoint analysis and other advanced methodologies.

137. As a result of Defendant's misrepresentations and omissions, Plaintiffs were injured and suffered damages by their payment of a price premium for the Product, which is the difference between what they paid based on its labeling and marketing, and how much it would have been sold for without the misleading representations and omissions identified here.

**COUNT II**
False and Misleading Adverting,
Fla. Stat. § 817.41

138. Plaintiffs incorporate by reference paragraphs 1-67.

139. Defendant made misrepresentations and omissions of material fact, by identifying and naming the Product a "Mimosa Hard Seltzer," in orange packaging, with pictures of oranges, described as "Made With Real Orange Juice," because it did not contain sparkling wine but alcohol derived from sugar, and was a "beer," through its advertisements and marketing in various forms of media, product packaging, labeling and descriptions, and/or targeted digital advertising.

140. Defendant failed to truthfully disclose that the Product did not contain sparkling wine and that it was a "beer," with its alcohol derived from sugar.

141. Defendant falsely and/or deceptively stated and/or implied that the Product contained sparkling wine, even though its alcohol was based on sugar.

142. Defendant's false and deceptive representations and omissions are material in that they are likely to influence consumer purchasing decisions, since consumers buying alcoholic beverages described as a "mimosa," promoting the presence of one essential ingredient, real orange juice, will expect the other essential ingredient of sparkling wine, especially considering the absence of any disclaimers to the contrary.

143. Defendant knew its statements and omissions were false and/or misleading.

144. Defendant intended for consumers to rely on its false statements and omissions for the purpose of selling the Product.

145. Plaintiffs and class members did in fact rely upon these statements and omissions.

146. Reliance was reasonable and justified because of the public trust placed in companies selling foods and alcoholic beverages, which require labeling and packaging to be informative and not misleading.

147. Plaintiffs paid more for the Product, as they would not have paid as much or bought it if they knew that it did not contain sparkling wine, because its alcohol content was based on sugar and was a "beer."

31

<u>Jury Demand and Prayer for Relief</u>

Plaintiffs demand a jury trial on all issues.

**WHEREFORE**, Plaintiffs pray for judgment:

1. Declaring this a proper class action, certifying Plaintiffs as representatives and the undersigned as counsel for the class;

2. Awarding monetary damages and interest;

3. Awarding costs and expenses, including reasonable fees for Plaintiffs' attorneys and experts; and

4. Other and further relief as the Court deems just and proper.

Dated:   March 15, 2024

Respectfully submitted,

/s/ William Wright
The Wright Law Office P.A.
515 N Flagler Dr Ste P300
West Palm Beach FL 33401
(561) 514-0904
willwright@wrightlawoffice.com

*Notice of Lead Counsel Designation:*

*Lead Counsel for Plaintiffs*

William Wright

The Wright Law Office P.A.

*Counsel for Plaintiffs*

**Certificate of Service**

I certify that on March 15, 2024, I served and/or transmitted the foregoing by the method below to the persons or entities indicated, at their last known address of record (blank where not applicable).

|  | CM/ECF | First-Class Mail | Email | Fax |
|---|---|---|---|---|
| Defendant's Counsel | ☐ | ☐ | ☐ | ☐ |
| Plaintiffs' Counsel | ☒ | ☐ | ☐ | ☐ |
| Courtesy Copy to Court | ☒ | ☐ | ☐ | ☐ |

/s/ William Wright